## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| SIDNEY C. LEWIS,<br>    Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| KILOLO KIJAKAZI, *Acting*<br>*Commissioner of Social Security*,[1]<br>    Defendant. | )<br>)<br>)<br>) |

CIVIL ACTION NO. 1:20-00368-N

### MEMORANDUM OPINION AND ORDER

Plaintiff Sidney C. Lewis brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying his applications for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*., and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*.[2] Upon due consideration of the parties'

---

[1] As has been called to the Court's attention in other cases, Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021. *See* https://www.ssa.gov/org/coss.htm; https://www.reuters.com/world/us/biden-fires-social-security-commissioner-2021-07-09/ (last visited Mar. 29, 2022). Accordingly, Kijakazi is automatically substituted for Andrew Saul as the defendant in this action under Federal Rule of Civil Procedure 25(d), and this action continues unabated. *See* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). The Clerk of Court is **DIRECTED** to update the title and docket of this case accordingly.

[2] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a)."

briefs (Docs. 15, 17) and those portions of the certified transcript of the administrative record (Docs. 11, 12) relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[3]

## I.    *Procedural Background*

Lewis filed the subject DIB and SSI applications with the Social Security Administration ("SSA") on August 28, 2017. After they were initially denied, Lewis requested, and on February 27 and July 17, 2019, received, hearings before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. On August 1, 2019, the ALJ issued an unfavorable decision on Lewis's applications, finding him not disabled under the Social Security Act and therefore not entitled to benefits. (*See* Doc. 12, PageID.76-95).

The Commissioner's decision on Lewis's applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied his request for review of the ALJ's unfavorable decision on May 26, 2020. (*Id.*, PageID.63-67). Lewis subsequently brought this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI

---

*Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

[3]    With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 13, 14).
    With the Court's consent, the parties jointly waived the opportunity to present oral argument. (*See* Docs. 19, 20).

benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). *See also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("A preponderance of the evidence is not required. In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." (citation omitted)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that

could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[4]

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come

---

[4] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter*, 808 F.3d at 822 ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (per curiam) (unpublished) ("The question is not, as Werner suggests, whether ALJ could have reasonably credited his testimony, but whether the ALJ was clearly wrong to discredit it." (footnote omitted)); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[5]

---

[5] However, "district court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam)

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been

---

(unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding.").

conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921

(11th Cir. 2019) (per curiam) (unpublished)[6] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton,* 209 F.3d at 455)).

Eligibility for DIB and SSI requires a showing that the claimant is disabled, 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2), meaning that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[7]

---

[6] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[7] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full

and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new

evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.    *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Lewis met the applicable insured status requirements through September 30, 2019, and that he had not engaged in substantial gainful activity since the alleged disability onset date of December 31, 2012.[8] (Doc. 12, PageID.81). At Step Two,[9] the ALJ determined that Lewis had the following severe impairments: a history of a traumatic brain injury; hypertension; a left knee disorder; depression; anxiety; alcohol abuse; a seizure disorder; borderline

---

[8] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211 (citation omitted).

[9] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.'" (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.'" *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

intellectual functioning; a mild cognitive impairment; and a mood disorder. (Doc. 12, PageID.81-82). At Step Three, [10] the ALJ found that Lewis did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 12, PageID.82-83).

At Step Four,[11] the ALJ determined that Lewis had the residual functional

---

[10] Conversely to Step Two, Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153.

[11] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

capacity (RFC) "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[12] except he can frequently climb ramps and stairs, but never climb ladders, ropes or scaffolds[; h]e can frequently balance, stoop, kneel, crouch, and crawl[; h]e can never engage in commercial vehicle driving or be exposed to unprotected heights, moving mechanical parts, or open bodies of water[; his] ability to understand, remember, and apply information and concentrate, persist and maintain pace is limited to performing simple and routine tasks[; h]is ability to use judgment is limited to simple work related decisions[; h]e can interact with supervisors and coworkers occasionally, but would do best with a few, familiar

_Phillips_, 357 F.3d at 1238-39 (footnote omitted). "[A]n ALJ's RFC assessment is an administrative finding based on all the relevant evidence, including both medical and nonmedical evidence." _Pupo v. Comm'r, Soc. Sec. Admin._, 17 F.4th 1054, 1065 (11th Cir. 2021).

12 "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." _Phillips_, 357 F.3d at 1239 n.4. The criteria for "light" work are as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

coworkers, in a well-spaced work environment[; h]e can work around the public, but should avoid direct interaction with them[; h]e can deal with occasional changes in a routine work setting[; and] he can sustain concentration and attention for two-hour periods." (Doc. 12, PageID.83-89).

Based on the RFC and the testimony of a vocational expert,[13] the ALJ found that Lewis was incapable of performing any past relevant work. (Doc. 12, PageID.89). However, at Step Five, after considering additional testimony from the vocational expert, the ALJ found that there exist a significant number of jobs in the national economy as a small parts assembler, laundry folder, and inspector and hand packager that Lewis could perform given his RFC, age, education, and work experience. (*Id.*, PageID.89-90). Thus, the ALJ found that Lewis was not under a disability as defined by the Social Security Act from the disability onset date through the date of the ALJ's decision. (*Id.*, PageID.90).

## IV.    *Analysis*

Lewis argues that the ALJ erred in finding the medical opinions of neuropsychologist Melissa Ogden, Ph.D., and psychiatrist John Broderick-Cantwell, M.D., to be unpersuasive, and in finding more persuasive the opinion of one-time examining psychologist Kenneth R. Starkey, Psy.D., despite finding that Dr.

---

[13] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

Starkey's opinion was "internally inconsistent." No reversible error has been shown.

"Medical opinions" are one category of evidence the Commissioner considers during the disability adjudication process. *See* 20 C.F.R. §§ 404.1513(a)(2) 416.913(a)(2). The Social Security regulations applicable to Lewis's applications define "medical opinion" as "a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [he or she] ha[s] one or more impairment-related limitations or restrictions in the following abilities: … (i) [the] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) [the] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) [the] ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) [the] ability to adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Under the Social Security regulations applicable to Lewis's applications, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). When a medical source provides one or more medical opinions or prior administrative medical findings, [the

Commissioner] will consider those medical opinions or prior administrative medical findings from that medical source together using [the following] factors[,]" *id.*: supportability, consistency, relationship with the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

"The most important factors … are supportability … and consistency…" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). *Accord* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The Commissioner "will explain how [the Commissioner] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). On the other hand, the Commissioner "may, but [is] not required to, explain how [the Commissioner] considered the [other] factors … when … articulat[ing] how [the Commissioner] consider[ed] medical opinions and prior administrative medical findings in [the] case record." *Id.*

On January 18, 2017, the SSA substantially revised the regulations governing how the Commissioner considers medical evidence, including medical opinions. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017). The rules for evaluating medical opinions found in §§ 404.1520c and 416.920c apply for claims filed on or after March 27, 2017, such as Lewis's. *Compare* 20 C.F.R. §§ 404.1520c, 416.920c (applicable to claims filed on or after on or after March 27, 2017) *with* 20 C.F.R. §§ 404.1527, 416.927 (applicable to claims filed before March 27, 2017). Under the regulations applicable to claims filed before March 27, 2017, the medical opinion of a treating physician could be entitled to "controlling weight" in certain circumstances. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, the 2017 revisions "removed the 'controlling weight' requirement for all applications filed after March 27, 2017." *Yanes v. Comm'r, Soc. Sec. Admin.*, No. 20-14233, 2021 WL 2982084, at *5 n.9 (11th Cir. July 15, 2021) (per curiam) (unpublished).

Lewis nevertheless argues the "controlling weight" rule for treating sources is still applicable to his claims because it is also stated in Social Security Ruling (SSR) 96-8p, *see* 1996 WL 374184, at *7 (July 2, 1996), which by its terms is not limited to claims file before March 2017, and which the Commissioner has not yet rescinded. "Social Security Rulings are agency rulings published under the authority of the Commissioner of Social Security and are binding on all components of the Administration." *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). Federal courts hearing appeals of the Commissioner's administrative decisions are not bound by SSRs, but they are accorded "great respect and deference

*where the statute is not clear and the legislative history offers no guidance.*" *B. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. Apr. 1981) (emphasis added).[14] *Accord Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1361 (11th Cir. 2018). *See also Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) ("We will not defer to SSRs if they are inconsistent with the statute or regulations."); *Langley v. Astrue*, 777 F. Supp. 2d 1250, 1253 (N.D. Ala. 2011) (Guin, J.) ("While courts generally defer to Social Security Rulings, if the ruling is inconsistent with the regulations, the regulation controls…"). Here, though, there is no ambiguity that would justify continuing to apply SSR 96-8p's "controlling weight"/treating source rule. That ruling provided guidance as to the SSA regulations then in effect; one purpose of the 2017 regulation revisions was to eliminate the "special intrinsic value" the old regulations assigned to treating source opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5852-54 (Jan. 18, 2017) (noting that the then-current treating source rule was adopted in 1991, and explaining why the SSA was "not retaining the treating source rule in final 404.1520c and 416.920c for claims filed on or after March 27, 2017").

Lewis also appears to argue that the new regulations do not overcome circuit

---

[14] On "October 1, 1981 pursuant to the Fifth Circuit Court of Appeals Reorganization Act of 1980, P.L. 96-452, 94 Stat. 1995, … the United States Court of Appeals for the Fifth Circuit was divided into two circuits, the Eleventh and the 'new Fifth.' " *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc). "The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981." *Smith v. Shook*, 237 F.3d 1322, 1325 n.1 (11th Cir. 2001) (per curiam).

precedent holding that, "[a]bsent good cause, an ALJ is to give the medical opinions of treating physicians substantial or considerable weight." *Winschel*, 631 F.3d at 1179. However, as the Commissioner correctly notes, "[c]ourts generally must defer to an agency statutory interpretation that is at odds with circuit precedent, so long as 'the agency's answer is based on a permissible construction of the statute.' " *Satellite Broad. & Commc'ns Ass'n of Am. v. Oman*, 17 F.3d 344, 347 (11th Cir. 1994) (quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S. Ct. 2778, 2782, 81 L. Ed. 2d 694 (1984)). *See also Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) ("[T]he fact that differences may exist between the new regulations and our version of the treating physician rule does not invalidate the regulations. New regulations at variance with prior judicial precedents are upheld unless they exceeded the Secretary's authority or are arbitrary and capricious." (quotation omitted)) (cited favorably in *Oman*, 17 F.3d at 348 n.8). Lewis makes no argument that the 2017 regulation revisions are at odds with any statute, exceed the Commissioner's authority, are arbitrary or capricious, or are otherwise improper.[15]

---

[15] In *Simon v. Commissioner, Social Security Administration*, 1 F.4th 908 (11th Cir. June 9, 2021) ("*Simon I*"), a panel of the Eleventh Circuit acknowledged, in footnote four of its opinion, that "[t]he SSA amended its rules in 2017 to remove th[e] 'controlling weight' requirement" for treating physicians. 1 F.4th at 918 n.4 (citing 20 C.F.R. § 404.1520c). However, the panel also noted that "the current version of the regulation still instructs an ALJ to weigh all medical opinions in light of the '[l]ength of the treatment relationship,' the '[f]requency of examinations,' the '[p]urpose of the treatment relationship,' and the '[e]xtent of the treatment relationship.' " *Id.* (quoting 20 C.F.R. § 404.1520c). The panel thus concluded that "[t]hese factors continue to indicate the importance of treating physicians' opinions—especially where the physician has maintained a longstanding and consistent relationship with the claimant." *Id.*

That conclusion regarding the new rules, however, was dicta, as *Simon I*

Thus, to the extent §§ 404.1520c and 416.920c are inconsistent with prior circuit precedent regarding medical opinions, those regulations control.

### 1.   Dr. Ogden

The ALJ addressed Dr. Ogden's medical opinion as follows:

> [A]fter administering intelligence testing and reviewing the claimant's available history in 2017, Dr. Ogden opined that the claimant would have difficulty obtaining competitive employment, due at least in part to his cognitive dysfunction and frontal lobe deficits, which appeared to create difficulty monitoring and modifying his behavior. She also completed a medical source statement assessing marked limitations in the claimant's ability to understand, remember, and carry out detailed instructions with off-task behavior at least 25 percent of the workday. Finally, she opined that the claimant would have marked difficulties in multiple areas necessary to complete a normal workday and workweek, including the ability to work in proximity to others, show awareness of hazards, accept criticism, get along with coworkers, respond appropriately to usual work situations, and set realistic goals. (Exhibit B4F, B8F).

---

concerned a DIB application filed in 2015, and thus the old rules concerning treating physicians clearly applied to it. Moreover, even that dicta appears to have been reconsidered, as the *Simon I* panel subsequently withdrew its opinion and replaced it with a new one on August 12, 2021. *See Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094 ("*Simon II*"). In *Simon II*, footnote four was revised to state, in full: "The [treating source 'controlling weight'] regulation … only applies to disability claims that were filed before March 27, 2017. Claims filed after that date are governed by a new regulation prescribing a somewhat different framework for evaluating medical opinions. *See* 20 C.F.R. § 404.1520c. Because Simon filed his claim in March of 2015, we need not and do not consider how the new regulation bears upon our precedents requiring an ALJ to give substantial or considerable weight to a treating physician's opinions absent good cause to do otherwise." *Id.* at 1104. And more recently, a panel of the Eleventh Circuit, albeit in an unpublished decision, held that the regulatory scheme applicable to claims filed on or after March 27, 2017, "no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion." *Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022) (per curiam) (unpublished).

This opinion is not persuasive, as the degree of limitation assessed is overly restrictive in light of intelligence testing showing a full scale IQ of 79, as well as the remainder of the claimant's mental health treatment records, which did not show any significant deficits in concentration, memory, or cognitive functioning. Specifically, Dr. Ogden's own report noted that the claimant understood conversation and testing instructions without difficulty, presented with an appropriate and reactive thought process, and was otherwise friendly and cooperative throughout the evaluation. Furthermore, she noted that the claimant could exercise, interact appropriately with siblings, perform odd jobs, manage his own money, drive, and was recently released from vocational rehabilitation after turning down job placement. The undersigned [ALJ] notes that Dr. Ogden examined the claimant only once, with her findings based primarily on subjective reports without any evidence of off-task behavior, which is not evident in corresponding mental health treatment records from MedPsych Systems or the VA. (Exhibit B4F)

(Doc. 12, PageID.87).

Lewis argues the ALJ's finding that Dr. Ogden "examined [Lewis] only once is erroneous" because a favorable decision on a prior application issued in 2010, which was in the record, discussed prior evaluations by Dr. Ogden (*see id.*, PageID.145-159), and because Lewis's representative noted Dr. Ogden's prior evaluations in a letter brief to the ALJ (*see id.*, PageID.397). However, Lewis does not cite to notes from any of these prior evaluations as being in the record, and the ALJ was not required to consider the description of Dr. Ogden's prior evaluations contained in the other decision, as a favorable decision by another ALJ "is not evidence for purposes of § 405(g)." *Hunter*, 808 F.3d at 822. *See also id.* (noting that "[a] decision is not evidence any more than evidence is a decision[,]" though indicating the evidence supporting

the other decision could be relevant).[16] Similarly, "a sentence in an unsworn brief is not evidence." *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013).

Moreover, even if the ALJ was technically incorrect to state that Dr. Ogden had only examined Lewis once, any such error was harmless. The above-quoted portion of the ALJ's decision satisfactorily indicates that the ALJ relied primarily on "the most important factors" of "supportability" and "consistency" when considering Dr. Ogden's medical opinion. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And even if Dr. Ogden had examined Lewis on more than one occasion, both the prior favorable decision and the letter brief of Lewis's representative indicate that the latest of those prior examinations occurred in December 2009, approximately three years before the alleged disability onset date for the subject applications, and approximately seven-and-a-half years before Dr. Ogden's June 2017 examination that the ALJ noted. Given the remoteness of Dr. Ogden's prior examinations from both the disability onset date and her June 2017 examination, the ALJ committed no reversible error in implicitly concluding that Dr. Ogden had, in effect, examined Lewis only once for purposes of the period at issue to the subject applications. *See* 20 C.F.R. §§ 404.1520c(c)(3)(i)-(ii), 416.920c(c)(3)(i)-(ii) (both the "length of time a medical source has treated you" and the "frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s)").

---

[16] Though *Hunter* addressed a favorable decision issued subsequent to the decision under review, the undersigned finds no reason that *Hunter*'s reasoning should not also apply to prior favorable decisions.

Lewis's arguments for why the ALJ should have found Dr. Ogden's opinion more persuasive boil down to three grounds: (1) she had examined Lewis on other occasions prior to the 2017 examination; (2) she administered various objective psychological tests as part of her 2017 examination; and (3) she is a neuropsychology specialist. As explained above, the temporal remoteness of the prior examinations from both the disability onset date and the 2017 examination significantly diminishes any treating relationship as a persuasive factor. A medical source's specialization in the area on which he or she is opining is certainly a relevant factor when considering the opinion's persuasiveness, *see* 20 C.F.R. §§ 404.1520c(c)(4), 416.920c(c)(4), but it is far from controlling, and is considered less important than an opinion's "supportability" and "consistency." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And while a medical source's presentation of "relevant…objective medical evidence" is an important factor in assessing the persuasiveness of that source's opinion, so are the source's "supporting explanations" and the opinion's consistency "with the evidence from other medical … and nonmedical sources…" 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

Here, the ALJ found that Dr. Ogden's opinion was not supported by objective portions of her own treatment notes, and was not consistent with the other medical evidence of record. Regarding Dr. Ogden's own notes, the ALJ found that the limitations assessed by Dr. Ogden were "overly restrictive in light of intelligence testing [performed by Dr. Ogden] showing a full scale IQ of 79[,]" (Doc. 12, PageID.87), a finding that Lewis does not contest. The ALJ also found that Dr. Ogden's opinions

were not supported by her notes indicating that Lewis "understood conversation and testing instructions without difficulty, presented with an appropriate and reactive thought process, … was otherwise friendly and cooperative throughout the evaluation[,] could exercise, interact appropriately with siblings, perform odd jobs, manage his own money, drive, and was recently released from vocational rehabilitation after turning down job placement." (*Id.*). Lewis also does not contest that determination.

Nor does he substantively address the ALJ's finding that Dr. Ogden's opinion was not consistent with "the remainder of [Lewis]'s mental health treatment records, which did not show any significant deficits in concentration, memory, or cognitive functioning." (*Id.*). Prior to addressing Dr. Ogden's opinion, the ALJ discussed Lewis's mental health treatment records dating from July 2015 to March 2019, repeatedly noting that they documented largely normal and unremarkable findings, and a history of conservative mental health treatment—characterizations Lewis also does not challenge.[17]

While Lewis has pointed to reasons why the ALJ <u>could</u> have found Dr. Ogden's opinion more persuasive, the Court's only concern is the conclusion the ALJ actually reached, not what other conclusions the record could have conceivably supported. *See* n.4, *supra*. Moreover, that conclusion need only be supported by substantial evidence, even if the evidence preponderates against it. *Ingram*, 496 F.3d at 1260. Here, the

---

[17] As will be discussed in more detail later, Dr. Cantwell's notes, spanning almost 3 years of treatment, documented largely unremarkable to moderate mental status limitations.

ALJ found that Dr. Ogden's opinion was not supported by findings in her own notes, and was not consistent with the other mental health treatment records on file. Lewis has largely failed to challenge the ALJ's view of the record as a whole, and a district court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, *Winschel*, 631 F.3d at 1178. The undersigned finds that substantial evidence supports the ALJ's decision to reject Dr. Ogden's opinion.[18]

### 2.      Dr. Cantwell

Dr. Cantwell provided mental health treatment to Lewis from July 2015 to May 2018. The ALJ addressed Dr. Cantwell's medical opinion, rendered December 11, 2017 (*see* Doc. 12, PageID.561-564), as follows:

> Dr. Cantwell…completed a medical source statement assessing moderate limitations in most functional areas necessary to function independently, appropriately, effectively, and on a sustained basis. He also assessed moderate to marked restrictions in the claimant's ability to respond appropriately to criticism from supervisors and get along with coworkers or peers, and marked limitations in setting realistic goals. Finally, he determined that the claimant would be off task 20

---

[18]      Lewis argues that his own subjective testimony supports Dr. Ogden's opinion. However, the ALJ found that Lewis's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record" (Doc. 12, PageID.84), and Lewis does not substantively address this credibility determination in his brief. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam) ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.").

Lewis takes issue with the ALJ's statement that Dr. Ogden's opinion was "based primarily on subjective reports," correctly pointing out that Dr. Ogden administered a number of objective psychological tests at the 2017 evaluation. While the accuracy of the ALJ's statement is debatable, any error on this part is harmless, as the ALJ's decision indicates he considered Dr. Ogden's objective testing, and the ALJ articulated sufficient other reasons for not finding Dr. Ogden's opinion persuasive.

percent of the day with two or more workplace absences per month. (Exhibit B9F)

This opinion is also unpersuasive, as his opinion regarding marked limitations is not consistent with the record as a whole, which generally revealed a cooperative demeanor with good memory and minimal issues on objective mental status examination. Furthermore, Dr. Cantwell provided minimal support for his assessment, which is inconsistent with his corresponding treatment records, showing a well-groomed, alert, and casual appearance with circumstantial, but logical thoughts. Furthermore, despite presenting with an irritable mood, the claimant otherwise showed an appropriate, cooperative, and pleasant affect, average intellectual functioning, fair insight, and full orientation. Finally, the degree of limitation assessed by Dr. Cantwell is inconsistent with the remaining opinions of record with no objective support in the record for off task behavior or workplace absences.

(*Id.*, PageID.87-88).

Substantial evidence supports the ALJ's determination that Dr. Cantwell's more extreme opinions—that Lewis had marked limitations in his ability to respond appropriately to criticism from supervisors, get along with coworkers or peers, and in setting realistic goals, and that he would be off task 20 percent of the day with two or more workplace absences per month—were not supported by the record. While Lewis claims that Dr. Cantwell's treatment notes support those limitations, mental status exams from those notes regularly showed Lewis's mental processes as being largely unremarkable and/or within normal limits (WNL). While Lewis generally demonstrated the most impairment in "judgment/insight," Dr. Cantwell never assigned anything greater than mild to moderate impairment in this area. Lewis's "mood" also fluctuated between visits, with irritability regularly noted, but the records do not command a finding that these fluctuations were so severe as to

indisputably support the marked limitations Dr. Cantwell opined. Lewis's "fund of knowledge," "attention/concentration," "memory," and "problem solving" were also regularly rated "fair" to "good." (*See id.*, PageID.447-448, 452, 458, 464-465, 470-471, 477-478, 555, 600). Overall, Lewis has failed to convince the undersigned that the ALJ's view of Dr. Cantwell's treatment notes was unreasonable, and the Court cannot reweigh the evidence or substitute its judgment for the ALJ's. *Winschel*, 631 F.3d at 1178. Dr. Ogden's objective findings—again, the ALJ's view of which Lewis does not substantively contest, *see supra*—also do not support Dr. Cantwell's more extreme limitations.

While Lewis's lengthy treatment history with Dr. Cantwell is certainly a factor that could bolster Dr. Cantwell's opinion, *see* 20 C.F.R. §§ 404.1520c(c)(4), 416.920c(c)(4), "supportability" and "consistency" are still the most important factors in deciding the persuasive value of any medical opinion, *see id.* §§ 404.1520c(b)(2), 416.920c(b)(2), and substantial evidence supports the ALJ's determination that the lack of objective support in the record for Dr. Cantwell's opinion ultimately outweighed any persuasive value his treating relationship with Lewis might have added.

### 3.    Dr. Starkey

Dr. Starkey conducted a consultative examination of Lewis in March 2019. The ALJ addressed Dr. Starkey's medical opinion as follows:

> With regard to Dr. Starkey's consultative examination, he opined as follows:

The claimant's ability to understand, remember, and carry out simple/concrete instructions appears generally adequate (from a psychological and cognitive perspective). His ability to work independently (vs. with Close Supervision) appears adequate (for simple/concrete tasks he has been trained to complete). He may require close supervision to assure adequate performance on more complex tasks. His ability to work with supervisors, co-workers and general public appears marginal (at the present time). His ability to deal with work pressures appears marginal to poor (at the present time). (Exhibit B15F)

Dr. Starkey also completed a medical source statement finding no more than mild limitations in the claimant's ability to understand, remember, and carry out simple instructions, but moderate limitations with regard to more complex instructions. Furthermore, he assessed mild limitations interacting with coworkers and the public, and moderate limitations interacting with supervisors, responding appropriately to usual work situations, and responding to changes in a routine work setting. (Exhibit B15F)

Dr. Starkey's medical source statement is persuasive, as consistent with the medical evidence of record and the claimant's functioning on examination; however, his narrative statement is unpersuasive, as he failed to define the meaning of the terms "adequate," "marginal," and "poor." Some of these terms are not consistent with the mild to moderate findings noted in the medical source statement, rendering his opinion internally inconsistent.

(Doc. 12, PageID.88).

Contrary to Lewis's contention, the ALJ did not "fail[] to explain why he chose one part of Dr. Starkey's opinion but refuted the other, if they were internally inconsistent with each other." (Doc. 15, PageID.763). The Social Security regulations provide that, "if any of the evidence in [a claimant's] case record, including any medical opinion(s) and prior administrative medical findings, is inconsistent, [the ALJ] will consider the relevant evidence and see if [he or she] can determine whether

[the claimant is] disabled based on the evidence [the Commissioner] ha[s]." 20 C.F.R. §§ 404.1520b(b)(1), 416.920b(b)(1). [19] Here, noting that some of the limitations imposed in Dr. Starkey's narrative statement appeared to be more severe than those imposed in the medical source statement, the ALJ reasonably resolved the inconsistency in favor of the limitations imposed in the medical source statement. First, the ALJ did not act unreasonably in determining that the limitations imposed in the medical source statement, which clearly defined the terms used to rate levels of functioning (*see* Doc. 12, PageID.699), was the true expression of Dr. Starkey's opinion over any of the broad and/or undefined terms used in Dr. Starkey's narrative statement that might suggest greater limitations.[20] Second, the ALJ determined that the limitations in the medical source statement were more consistent with the objective findings in Dr. Starkey's examination notes and the record as a whole, a determination Lewis does not address.[21] For the same reasons the record as a whole did not support Dr. Ogden and Dr. Cantwell's opinions, *see supra*, they also did not support any greater limitation than that given in Dr. Starkey's medical source statement. Accordingly, the ALJ did not err in resolving the inconsistency in Dr.

---

[19] Evidence is considered "inconsistent," *inter alia*, when it "contains an internal conflict." 20 C.F.R. §§ 404.1520b(b), 416.920b(b).

[20] The undersigned acknowledges that the ALJ could have more artfully stated his reasoning on this point.

[21] Lewis appears to assert that Dr. Starkey's opinion should have been found less persuasive than Dr. Ogden's because Dr. Starkey is a "clinical psychologist rather than a neuropsychologist" like Dr. Ogden (*see* Doc. 15, PageID.762), but he fails to elaborate on how this distinction makes Dr. Starkey any less of a mental health specialist than Dr. Ogden for purposes of §§ 404.1520c(c)(4) and 416.920c(c)(4).

Starkey's opinion in favor of the medical source statement.[22]

No reversible error having been shown, the Court finds that the Commissioner's final decision denying Lewis's applications for benefits is due to be **AFFIRMED**.

## V.   *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Lewis's August 28, 2017 DIB and SSI applications is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

A final judgment consistent with this opinion and order shall issue separately under Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 30th day of March 2022.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[22] Lewis's last claim of reversible error is that the ALJ's hypothetical to the vocational expert did not include all of his impairments. *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam) ("In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."). However, this claim is premised entirely on the argument that the ALJ's "failure to accord proper weight to the medical opinions of Dr. Ogden and Dr. Cantwell led to a flawed RFC determination used as the basis of the first hypothetical." (Doc. 15, PageID.768). Because, as explained above, the ALJ properly considered those opinions, this last claim must also fail.